# EXHIBIT 4

DISTRICT OF COLUMBIA
OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
Student Hearing Office
810 First Street, N.E.
Washington, DC 20002

| | |
|---|---|
| Parent, on behalf of STUDENT,[1] | ) ) ) |
| Petitioner, | ) Case Number: 2011-0324 ) |
| v. | ) Hearing Date: May 25, 2011 ) Room: 2004 |
| THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS, | ) ) Hearing Officer: Frances Raskin ) |
| Respondent. | ) |

## CONSENT ORDER

### I. JURISDICTION

This proceeding was invoked in accordance with the Individuals With Disabilities Education Improvement Act of 2004 ("IDEA"), codified at 20 U.S.C. §§ 1400 *et seq.*, and implemented at 34 C.F.R. §§ 300.1 *et seq.*, the D.C. Code at §§ 38-2561.01 *et seq.*, and the District of Columbia regulations at D.C. Mun. Reg. tit. 5-E §§ 3000 *et seq.*

### II. BACKGROUND

Petitioner is the parent of a fifteen-year-old student ("Student") with a disability who attends a public charter school in the District of Columbia. On March 28, 2011, Petitioner filed a Due Process Compliant ("Complaint") against the District of Columbia Public Schools ("DCPS") pursuant to the Individuals with Disabilities Education Act.

This Hearing Officer was appointed to preside over this case on March 30, 2011. Respondent DCPS filed a response to the Complaint on April 13, 2011.

The parties waived the resolution session meeting on April 14, 2011. Thus, the forty-five day, due process hearing timeline began on April 15, 2011.

On April 22, 2011, this Hearing Officer held a prehearing conference in which Roberta Gambale, counsel for Petitioner, and Tanya Chor, counsel for Respondent DCPS, participated. The parties agreed that the due process hearing would take place on May 25, 2011. This was the

---

[1] Personal identification information is provided in Attachment A.

first date on which both parties would be available. On April 22, 2011, Petitioner filed this motion to allow the due process hearing to proceed on this date.

On May 2, 2011, this Hearing Officer issued a prehearing conference summary and order ("Prehearing Order"). In the Prehearing Order, this Hearing Officer certified the following issue for adjudication at the due process hearing:

Whether DCPS denied the Student a free, appropriate, public education by developing an individualized educational program ("IEP") on January 6, 2011, that fails to address his disability of Asperger's Syndrome by failing to provide social skills goals and social skills therapy. Petitioner requests relief in the form of an order requiring DCPS to revise the Student's IEP to include social skills goals and therapy and to provide the Student compensatory education in the form of social skills therapy.

At the outset of the due process hearing[2] on May 25, 2011, the parties agreed to a consent order that resolves all the claims and requests for relief in this case.

### III. ORDER.

By agreement of the parties, this 28th day of May 2011, it is hereby:

**ORDERED** that DCPS shall fund twenty (20) hours of independent, social skills training for the Student, in a group of students with similar needs, through a provider of Petitioner's choice;

**IT IS FURTHER ORDERED** that the cost of the social skills training authorized by this Order shall not exceed $95 per hour;

**IT IS FURTHER ORDERED** that the social skills training authorized by this order shall be completed by May 25, 2012;

**IT IS FURTHER ORDERED** that Petitioner's Motion for Continuance is **DENIED AS MOOT**; and

**IT IS FURTHER ORDERED** that all remaining claims and requests for relief, including Petitioner's request for compensatory education, are hereby **DISMISSED WITH PREJUDICE**.

By: /s/ *Frances Raskin*
Frances Raskin
Hearing Officer

---

[2] The parties reached agreement after their respective disclosures were entered into evidence but prior to providing opening statements. No witnesses testified at the due process hearing.

## NOTICE OF APPEAL RIGHTS

The decision issued by the Hearing Officer is final, except that any party aggrieved by the findings and decision of the Hearing Officer shall have 90 days from the date of the decision of the hearing officer to file a civil action with respect to the issues presented at the due process hearing in a district court of the United States or a District of Columbia court of competent jurisdiction, as provided in 20 U.S.C. § 1415(i)(2).

Distributed to:

Roberta Gambale, counsel for Petitioners
Tanya Chor, counsel for Respondent
Hearing Office
dueprocess@dc.gov

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THELMA WILLIAMS, ET AL. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-cv-1305 (CKK) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

## VERIFIED STATEMENT OF MIGUEL A. HULL

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. That the law firm of James E. Brown & Associates, PLLC, has served as counsel for the Plaintiffs in the underlying administrative actions and federal court litigation in this case.

3. The times and expenses itemized in the itemization attached to the Plaintiff's Complaint, accurately represent the times spent and expenses incurred by James E. Brown & Associates, PLLC in litigating this case and the underlying administrative action, as those items were contemporaneously recorded.

4. James E. Brown & Associates currently matches its hourly rates to ¾ of those in what is commonly known as "the adjusted Laffey matrix," adjusted for changes in the Consumer Price Index for All Urban Consumers (CPI-U)

5. The expenses in the itemization are the charges customarily paid in this field in this jurisdiction.

1

6. I am presently an attorney in good standing with the bars of Maryland and the District of Columbia having been so admitted in December 1998 and January 2000, respectively. I am also on an "inactive" status, but in good standing, with the Bar of Texas.

7. I received my Juris Doctorate from The University of North Carolina School of Law at Chapel Hill in May 1998.

8. In December of 1992, I graduated from the University of Maryland at College Park with a Bachelor of Arts.

9. I am fluent in Spanish, having lived and attended junior and part of senior high school in Central America for five years and I have used my Spanish language skills in nearly every employment position that I have held since graduating from college.

10. I have been an associate at Brown & Associates since January 2002 and have litigated approximately 1000 special education cases. Most of my clients at Brown & Associates are minorities of limited means, many of whom are immigrants from Mexico and Central America and for whom Spanish is their first language.

11. During my time at Brown & Associates, from July 2008 until October 2009, I have also been a member of the District of Columbia Superior Court's Counsel for Child Abuse and Neglect ("C-CAN") Panel. As a member of that panel, I was appointed by the Court on many occasions to serve as an education attorney for parents and their children who were also before the court in matters pertaining to abuse and neglect or juvenile delinquency. In that capacity, I provided representation on special education matters as I have done for the retained clients at Brown & Associates. To become a member of the C-CAN Panel, I had to submit a lengthy application to the Court detailing my experience as an attorney overall and in special education. I also had to attend a two-day seminar on

special education that was provided by the District of Columbia Office of the Public Defender. My membership on that panel expired October 2009 and although I was welcomed to reapply, I chose not to do so as I was already sufficiently occupied with the retained clients that I already had at Brown & Associates.

12. During my time at Brown & Associates I have gained a reputation in the community as competent special education attorney.

    a. On many occasions, I have been invited by parent support groups to conduct workshops on special education.

    b. I also consistently receive calls from social workers, community activists, medical providers, and even public school staff referring me individuals to represent in special education matters.

    c. Likewise, since leaving the C-CAN Panel, I have received many telephone calls from judges' chambers, probations officers, and defense attorneys who were impressed with my work on the panel and ask me to represent individuals in special education matters, individuals who are also before the Court in matters of abuse and neglect or juvenile delinquency.

13. I also have experience as a general practitioner. Prior to joining Brown & Associates, from September 1999 until December 2001, I was an associate attorney at the Law Offices of Ivan Waldman & Associates in Langley Park, Maryland where I provided legal representation to individuals before administrative agencies, and state courts in matters regarding traffic infractions, criminal law, personal injury, workers compensation, and family law. This work included preparation of complaints, discovery responses and requests, pre-trial and post-trial motions, litigation at trial, and preparation

3

of briefs in appellate cases in Maryland and District of Columbia appellate courts. I also conducted oral argument before the Maryland Court of Special Appeals in one case involving workmen's compensation.

14. In addition, from December 1998 until August 1999, I was staff counsel with the Democratic National Committee where I provided legal assistance in the preparation of responses to numerous U.S. Department of Justice and Congressional subpoenas regarding campaign finance investigations.

15. While in law school, I also gained practical legal experience.

    a. From June 1997 until August 1997, I was a law clerk with the United States Attorney's Office for the Eastern District of North Carolina in Raleigh, North Carolina. While there, I conducted legal research and drafted legal memoranda and responses to motions on issues regarding pretrial release, exclusion of evidence, and post-conviction matters. On several occasions during that time, and under the supervision of a licensed attorney, I appeared as counsel on behalf of the United States at court hearings regarding pre-trial release.

    b. From June 1996 until August 1996, while in law school, I worked as a law clerk at Immigration Services of Catholic Charities of Dallas, Texas. In that position, I prepared immigration applications on behalf of indigent clients seeking residency, asylum, and citizenship in the United States. I also conducted interviews with these clients and explained the immigration process to them.

    c. In 1997, also while in law school, I participated in the school's Legal Aid Clinic where, under the supervision of a licensed attorney, I represented indigent clients in criminal matters before the state trial courts. In one case involving a charge of

4

driving under the influence, I was successful in suppressing the results of a breathalyzer test on grounds that the arresting officer had violated the non-English speaking defendant's constitutional rights when he failed to properly notify the defendant in Spanish of his rights to refuse to take the test –a novel argument that had not been directly addressed by the North Carolina Courts at the time. See Carolina Law Alumni News Winter 1999 Vol. 23, No. 1.

16. Prior to law school, I also gained valuable experience that I draw on in the work that I do now for Brown & Associates.

   a. From January 1994 until June 1995, I worked and lived as an unpaid volunteer at the Annunciation House in El Paso, Texas. The Annunciation House is a transitional shelter devoted to serving indigent immigrants, families with children and adult individuals, from Mexico and Central America providing them with food and shelter and assistance in transitioning to self-sufficient living in the United States. Volunteers at the Annunciation House run the shelter and provide general support to the resident guests.

   b. From January 1992 until December 1993, I was a legal assistant at two law firms in Washington, D.C.: Stroock, Stroock, and Lavan, and Dorsey & Whitney. As legal assistant, I provided support to attorneys in matters pertaining to international trade.

   c. In addition, while an undergraduate student at the University of Maryland-College Park, I participated in the school's Student Legal Aid Clinic where, under the supervision of a licensed attorney, I assisted fellow students to resolve disputes

involving landlords, employers, roommates, and violations of the University's Code of Student Conduct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10-23-14

Miguel A. Hull, Esq.

# EXHIBIT 6

Antonio Teel

758 Hunters Quay

Chesapeake, VA 23320

757-544-1738 (Cell)

steel4555@hotmail.com

## Objective

Pursuing opportunities to develop and enhance my work style and skills in a professional environment as well as gain further hands on knowledge of Computer Information System and Computer Science in a work force environment.

## Employment

Collections Rep Years Employed (03/2008-09/2011)

*HSBC Card services chesapeake, va*

### RESPONSIBILITIES:

protect customers from fraudulent activity on their accounts
fax need documents to customers concerning accounts
navigated through multiple computer systems to investigate fraudulent activity

contact customers to inform of the progress of accounts

collect on past due accounts
Answering phone calls and providing costumers with needed information.

Fraud specialist Years Employed (09/2006-09/2007)

*Dominion Enterprises Norfolk, VA*

### RESPONSIBILITIES:

protect customers from fraudulent activity on their accounts
fax need documents to customers concerning accounts
navigated through multiple computer systems to investigate fraudulent activity

contact customers to inform of the progress of the investigation and findings

fraud specialist Years Employed (07/2005-08/2006)

*Capital One Richmond, VA*

*RESPONSIBILITIES:*

protect customers from fraudulent activity on their accounts
fax need documents to customers concerning accounts
navigated through multiple computer systems to investigate fraudulent activity
contact customers to inform of the progress of the investigation and findings.

Photographer/sales associate Years Employed (10/2005-12/2005)

*Picture People Richmond, VA*

*RESPONSIBILITIES:*

* Answering phone calls and providing costumers with needed information.

* Taking elaborate picture of people and interacting with children and their parents.

* Showing and selling pictures in a professional setting.

intern Years Employed (06/2005-08/2005)

*James E. Brown & Associates Washington, DC*

RESPONSIBILITIES:

* Provided administrative and secretarial support in an office environment.

* Organize and maintain department files, both electronic and paper.

* Provided receptionist duties, including answering phones and greeting visitors.

* Making copies of important documents for advocates and lawyers.

* Faxing documents to different schools court houses and lawyers.

* Filing away import documents and keeping them up to date.

Education

business administration- computer info. systems Years Attended (2004-2006)

SOPHOMORE - Virginia Union University Richmond, VA

COURSES:

* CIS 163

* CIS 263

* MGT 199

* ECO 231

Skills

Computers Skills

* Data Entry

* Knowledge in Windows 98, 2000, ME, XP

* Able to copy, fax, file, and scan

* Know how to use PowerPoint

* Knowledge in using Excel.

* Installing Software, Hardware into CPU's

Running Ethernet cables, Installing Network Interface Card, Setting up hubs for multiple internet access or network interface

Customer Service Skills

Talking to customer about products.
Selling products to customers.

Volunteer Work

Location: Sydney Lewis Business Department, Virginia Union University

Hours: 8/week

Dates: 2/3/05-4/2/05

Duties: Monitoring Computer Lab, Data Entry, Filing, Phone Answering.

| David Proctor | Phone: (240) 464-1245   Page 1 of 3 |
|---|---|

# David Proctor

3938 Livingston Street, NW Washington, DC 20015  (240) 464-1245  dproctor413@gmail.com

## Senior Paralegal

## Summary

Senior Paralegal with over 11 years of experience in litigation support, training, and project management. Proven expertise in strategic case development and legal document drafting. Required to maintain an intimate knowledge of every facet of the organizations operations and procedures.

## Professional Experience

**James E. Brown and Associates — Washington, DC**
*Law firm representing children with special needs.*

Senior Paralegal, 2004 to Present

- Advise Managing Partner on a myriad of issues ranging from organizational direction, managerial oversight and technical infrastructure issues related to the law firm's operations resulting in improved case management and lowered administrative overhead
- Collected and analyzed complex data from various sources for the purpose of presenting my findings on difficult administrative, financial and human resource issues for supervisor and other senior leaders to facilitate the decision-making process
- Presented detailed descriptions of new techniques and precedents on a regular and recurring basis through the creation of reports, spreadsheets and presentations for general staff and office senior officials
- Maintained the condition of various internal operating processes, procedures and actions such as client relations, case management, employee reviews and information systems
- Ensure that all office positions are staffed by competent and capable employees that strive for continuing performance improvement within their respective duties
- Design and lead comprehensive studies, analysis, and reviews involving the coordination and implementation of several elements of the law firm including attorneys, administrative staff, and upper management
- Independently gathers, researches, and analyzes data for management functions and then clearly interprets findings and provides recommended courses of action
- Developed and rolled out new policies and procedures as co-chair of committee to optimize office efficiency, working closely with senior management and staff, resulting in a detailed organizational policy & procedures handbook, incentives to improve performance and maximum usage of office resources
- Charged with the constant development of process improvements to the administrative and management support operations such as equipment procurement, financial projections, and human resource issues
- Created a detailed employee performance review process based on quarterly evaluation of job performance, financial viability and initiative by drafting evaluation forms and ensuring that staff adhere to the procedures for review
- Recruit, hire and supervise administrative staff as needed to fill the office positions required to manage an ever increasing caseload by reviewing manpower requirements, physical facilities utilization, and the capital equipment available
- Optimize human capital and financial resources by creating strategies and plans that match employees with new and changing duties that suit their particular skill-sets
- Train all employees on the use of office technology such as telephones, computer systems, and imaging equipment through a structured training program
- Planned and executed off-site staff development seminar by arranging trainers, break-out sessions and coordinated logistics with conference center staff

| David Proctor | Phone: (240) 464-1245   Page 2 of 3 |
|---|---|

- Oversee office personnel management by establishing productivity goals and professional standards and keeping meticulous records of attendance, billing, and staff morale while assisting with the full-life cycle of employees including: job postings, interviews, negotiating salaries, on-boarding and off-boarding
- Manage programs, lunches, special events, bi weekly staff meetings and team building off-sites, providing information, guidance and advice to all staff
- Oversight and assistance of employee relations and counseling on issues including policies and procedures, performance, morale, team building and conflict resolution
- Served as liaison between Senior Management, real estate, building management, and moving personnel through teleconference, web based and in person meetings to coordinate several cross town moves of office equipment and personnel
- Assist Managing Partner by overseeing facilities management issues and the expansion of office space by reviewing, adjusting, and approving both low and high voltage wiring drops for all new offices, addressing or relaying questions from contract foreman regarding demolition, office space allocation, timetables and issues with the installation of a glycol cooling unit for the server room
- Charged with all aspects of facilities management including the research and procurement of hardware and information systems to streamline office productivity, reduce operating costs and modernize aging infrastructure by negotiating with vendors and attending informational sessions regarding new technologies
- Successfully reduced quoted costs, conducted market research on competing companies, tailored customs systems, served as point person during installation, and received training on all new information systems which allowed for effective development of programs to address training needs of staff
- Upgraded and maintained Windows network consisting of client computers, servers, and imaging technology by troubleshooting network and hardware problems, installing software updates, managing emails, disaster recovery, database management and training staff on the use of all information systems

### Kaiser Permanente — Rockville, MD
*Health Insurance Company Corporate Office*

<u>Temporary Administrative Assistant</u>, 2003 to 2004

- Researched and developed a list of frequently asked questions regarding new HIPPA regulations for distribution to all employees on the firm's intranet site
- Coordinated client account changes by contacting policyholders regarding payments and changes
- Utilized a plethora of skills obtained in office administration to perform clerical duties such as note taking, tracking system development and client relations that allowed managers to maximize their productivity with minimal oversight

### Murrell and Associates — Washington, DC
*Law firm representing children with special needs*

<u>Office Manager/Senior Paralegal</u>, 1999 to 2003

- Recruited and trained paralegals to assist associate attorneys by assessing their individual abilities to handle the demanding workload and matching them to the appropriate staff member
- Managed full attorney caseload by tracking the day-to-day progress of cases and informing clients of case status, therefore, reducing the staff requirements and allowing one staff member to schedule appointments for several attorneys
- Coordinated client intakes by accessing client needs and ensuring they were well informed and comfortable with the process
- Attended to the clients' needs by telephone and in-office conference sessions after which the attorney would be briefed on the information obtained, thus, ensuring the highest level of client satisfaction
- Prepare timely responses to inquiries from clients, Judges and attorneys by drafted correspondences, legal memos and case status reports
- Developed a system from the ground up to electronically archive all closed and inactive case files granting staff easier access to documents and allowing for office space reallocation
- Designed and maintained computer network of twenty computers including regular updates to the server and client computers which reduced down time thus improving productivity and access to office resources

## Education & Certifications

**University of Maryland University College — Adelphi, MD**
Bachelor of Science in Business Administration, 2009

Certificate in Computer Networking, 2009

| David Proctor | Phone: (240) 464-1245  Page 3 of 3 |
|---|---|

## Skills & Activities

- Knowledge of general and advanced administrative and management process and practices
- Exceptional communication and interpersonal skills
- Impeccable abilities in interpreting and applying regulations and changes to regulations
- Ability to evaluate and develop methods and procedures to improve workflow
- President of the Thayer Towers Condominium Association beginning in 2010; Treasurer 2008-2010
- Volunteer in the planning and coordination of public programs for the Piscataway Conoy Tribe of Maryland

References Available Upon Request

# EXHIBIT 7

## LAFFEY MATRIX -- 2003-2013
### (2009-10 rates were unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 | 12-13 |
|---|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 | 495 | 505 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 | 435 | 445 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 | 350 | 355 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 | 285 | 290 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 | 240 | 245 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 | 140 | 145 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g., Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995).